IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | 8:12CV190 |
| v. | ) | |
| | ) | CONSENT DECREE |
| | ) | |
| ENTERPRISE PRODUCTS OPERATING, L.L.C.; | ) | |
| and MID-AMERICA PIPELINE COMPANY, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

WHEREAS Plaintiff the United States of America, on behalf of the United States Environmental Protection Agency (EPA), has filed a Complaint in this action concurrently with this Consent Decree against Defendants Enterprise Products Operating, L.L.C. ("Enterprise") and Mid-America Pipeline Company, L.L.C. ("MAPL") (collectively "Settling Defendants") under Sections 301, 309 and 311 of the Clean Water Act ("CWA"), 33 U.S.C. § 1251 *et seq*.

WHEREAS the Complaint alleges that Settling Defendants are and were the owners and operators of a natural gasoline pipeline known as the West Red Pipeline, from which there was a discharge of oil on March 29, 2007, near Yutan, Nebraska, on April 23, 2010, near Niles, Kansas and on August 13, 2011, near Onawa, Iowa.

WHEREAS Settling Defendants do not admit any liability to the United States arising out of the transactions or occurrences alleged in the Complaint.

WHEREAS the Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between the Parties and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section I, and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I.  JURISDICTION AND VENUE

1.     This Court has jurisdiction over the subject matter of the United States' claims in this action pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, Sections 309(b), 311 (b)(7)(E) and 311(n) of the CWA, 33 U.S.C. §§ 1319(b), 1321(b)(7)(E) and (n), and Section 109(c) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), 42 U.S.C. § 9609(c).  The Court has personal jurisdiction over the Parties to this Consent Decree. Venue lies in this District pursuant to 28 U.S.C. §§ 1391(b) and (c), and 1395(a), because one of the discharges alleged in the Complaint occurred in, and Settling Defendants conduct business in, this judicial district.  For purposes of this Decree, or any action to enforce this Decree, Settling Defendants consent to the Court's jurisdiction and to venue in this judicial district.

2.     For purposes of this Consent Decree, Defendants agree that the Complaint states claims upon which relief may be granted pursuant to Sections 301, 309 and 311 of the Clean Water Act, 33 U.S.C. §§ 1311, 1319 and 1321.

## II.  APPLICABILITY

3.     The obligations of this Consent Decree apply to and are binding upon the United States, and upon Settling Defendants joint and severally, and upon any successors or assigns.

4.     No transfer of ownership or operation of the Pipeline or any portion thereof, prior to the Termination Date, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve Settling Defendants of their obligation to ensure that the terms of this Decree are implemented unless EPA agrees to the substitution of the new owner for Settling Defendants.  Such agreement will not be unreasonably withheld.  Any transfer of ownership or operation of any portion

United States v. Enterprise et al. Consent Decree Page 2.

of the Pipeline to any other person must be conditioned upon the transferee's agreement to undertake the obligations required by this Consent Decree as provided in a written agreement between Settling Defendants and the proposed transferee, enforceable by the United States as a third-party beneficiary of such agreement.  At least 30 Days prior to such transfer, Settling Defendants shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to EPA Region 7 and to the United States Department of Justice, in accordance with Section XIV of this Decree (Notices).  Any transfer of ownership or operation of the Pipeline without complying with this Paragraph constitutes a violation of this Decree.

5.     Settling Defendants shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Decree.  Settling Defendants shall also provide to any contractor retained to perform work required under this Consent Decree with the provisions of the Consent Decree that are relevant to the work that contractor is performing.  Settling Defendants shall instruct their contractors to perform such work in conformity with the terms of this Consent Decree.

6.     In any action to enforce this Consent Decree, Settling Defendants shall not raise as a defense the failure by any of their officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

## III.  DEFINITIONS

7.     Terms used in this Consent Decree that are defined or used in the CWA, or in regulations promulgated thereunder, shall have the meanings assigned to them in the CWA or such regulations promulgated thereunder, unless otherwise provided in this Decree.  Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

"Calendar Year" or "Year" shall mean the period of time consisting of 365 or 366 days beginning on January 1 and continuing to and including December 31.

"Complaint" shall mean the complaint filed by Plaintiff in this action, unless noted otherwise.

"Consent Decree" or "Decree" shall mean this Decree.

"Day" shall mean a calendar day unless expressly stated to be a working day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next working day.

"Date of Lodging" shall mean the day that this Consent Decree is lodged with the Court for the public comment period.

"Deep Tilling" shall mean agricultural activity, including plowing and ripping, where the earth is disturbed greater than 18 inches in depth or, as it relates to tilling in a specific area, greater than the known pipeline depth in that area.

"Defendants" or "Settling Defendants" shall mean Enterprise Products Operating, L.L.C. and Mid-America Pipeline Company, L.L.C.

"Effective Date" shall mean the day that this Consent Decree is entered and signed by the Court.

"Excavation" shall mean the movement of earth, rock, soil, or other material by any means including blasting, boring, channeling, grading, clearing, tunneling, drilling, jack-hammering, digging, or backfilling below the existing grade by non-mechanical or mechanical equipment or by explosives.  Excavation shall not include normal agricultural practices, including plowing, tilling, planting, and harvesting that are unlikely to reach the depths of the Pipeline.

"EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies.

"Interest" shall mean interest at the rate specified in 28 U.S.C. § 1961.

"One Call" shall mean any system used by a state through which contractors and other excavators may alert the state and utilities to a planned Excavation and determine whether the planned Excavation is in an area where there is a pipeline, electric, gas or other buried conduit or utility.

"Paragraph" shall mean a portion of this Decree identified by an Arabic numeral.

"Parties" shall mean the United States and Settling Defendants.

"Pipeline" shall mean the assets used to transport natural gasoline or other petroleum products, including all of their components, as depicted on Appendix A, owned and/or operated by Settling Defendants as of the Date of Lodging of this Consent Decree that are located in the states of Iowa, Kansas, Nebraska and Minnesota.  These assets, known as the 8-inch West Red Pipeline, start near Conway, Kansas and end near Pine Bend, Minnesota.

"Plaintiff" shall mean the United States.

"Pipeline Right of Way" or "ROW" shall mean the strip of land or water upon which the Pipeline is located and on which the Settling Defendants have a legal right to bury, maintain, and access the Pipeline.

"Section" shall mean a portion of this Decree identified by a Roman numeral.

"Termination Date" shall mean the date on which Settling Defendants' obligations under this Consent Decree terminate as provided by Section XVIII of this Consent Decree.

"United States" shall mean the United States of America, acting on behalf of EPA.

## IV.  CIVIL PENALTY

8.     Within 30 Days after the Effective Date of this Consent Decree, Settling Defendants shall pay the sum of $1,042,000.00 as a civil penalty, together with Interest accruing from the Date of Lodging.

9.      Settling Defendants shall pay the civil penalty and accumulated Interest due by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice in accordance with written instructions to be provided to Settling Defendants, following lodging of the Consent Decree, by the Financial Litigation Unit of the U.S. Attorney's Office for the District of Nebraska. At the time of payment, Settling Defendants shall send a copy of the EFT authorization form and the EFT transaction record, together with a transmittal letter, which shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in United States v. Enterprise Products Operating et al., that the payment is to be deposited into the Oil Spill Liability Trust Fund pursuant to 33 U.S.C. § 1321(s) and 26 U.S.C. § 9509(b)(8), and shall reference the civil action number and DOJ case number 90-5-1-1-06074/4, to the United States in accordance with Section XIV of this Decree (Notices); by email to acctsreceivable.CINWD@epa.gov; and by mail to:

> EPA Cincinnati Finance Office
> 26 Martin Luther King Drive
> Cincinnati, OH 45268

10.     Settling Defendants shall not deduct any penalties paid under this Decree pursuant to this Section or Section VIII (Stipulated Penalties) in calculating their federal income tax.

## V.  REQUIREMENTS PERTAINING TO REPORTING OF SPILLS AND PREVENTION OF THIRD PARTY DAMAGE TO PIPELINE

11.     Potential Conflict with DOT Part 195.440, Public Awareness. With respect to matters addressed in Paragraphs 12-21 below, if there is any conflict with DOT Part 195.440, 49 C.F.R. § 195.440, or legally required compliance with API 1162 or any applicable laws or regulations, Defendants shall comply with the stricter requirement from and after the applicable effective date of such stricter requirement. The United States retains all enforcement authorities with respect to such stricter requirements under the law but Defendants shall not be subject to stipulated penalties under this Consent Decree for failure to comply with such stricter requirements.

United States v. Enterprise et al. Consent Decree Page 6.

12.     <u>Aerial Patrol Activities</u>.  Within 1 year of the Effective Date, and at least once every Calendar Year thereafter, an employee of Defendants shall fly with each pilot doing aerial patrols of the Pipeline on behalf of Defendants, except for substitute pilots that fly infrequently for Defendants to cover for a normal pilot that is unable to fly because of an unplanned event such as illness. The Defendants' employee(s) shall be trained and qualified in recording and reviewing ROW concerns during the aerial patrol, including but not limited to, encroachments, potential for mechanical damage, exposed pipe, and, if visible, whether farming methods may threaten the Pipeline.

13.     <u>Defendants' Contractor Requirements</u>.  Within 1 year of the Effective Date, Defendants shall require all of their contractors performing Excavation activities on the Pipeline to use the One Call system applicable in the state in which they are working and require that such activities be undertaken in a manner consistent with industry standards of due care.

14.     <u>Notification to State of Excavators Not Following One Call</u>.  Beginning no later than 1 year after Effective Date of this Consent Decree, whenever Defendants become aware of any contractors, excavators, ROW owners, or tenants who have performed an Excavation that potentially impacts the Pipeline requiring One Call notification in accordance with applicable state law without notifying an applicable One Call system, Defendants shall notify the state authorities responsible for enforcement.  Defendants shall also contact such contractors, excavators, or ROW owners or tenants as soon as it becomes aware of such incident and inform them of the One Call system and its importance in preserving pipeline integrity.

15.     <u>Release Reporting</u>.  For any releases of natural gasoline from the Pipeline that Defendants know have reached a body of water, Defendants shall promptly report the release to the National Response Center. Defendants shall make the report regardless of whether the body of water to which oil has been released is a navigable water within the meaning of the Clean Water Act. By

making such a report, Defendants shall not waive their right to contest whether such body of water is a navigable water.

16.     When Defendants make an initial report of a release to surface water pursuant to Paragraph 15, Defendants shall report the volume released from the Pipeline as the calculated volume of the Pipeline between the nearest upstream and downstream block valves for the Pipeline. If the location of the nearest upstream and downstream block valves is unknown or uncertain at the time of the release. Defendants shall report the volume released from the Pipeline as the calculated volume of a 10-mile segment of the Pipeline.  Defendants shall report this calculated volume regardless of any contrary information Defendants may possess that the release volume is less or different, and the United States shall not claim or allege in any forum that Defendants should have reported a lesser or different quantity. Subsequent to the initial notification, once Defendants have verified additional information concerning the actual quantity released, Defendants may provide updated information or estimates to the National Response Center to inform the National Response Center that the volume released is different.

17.     Appointment of a Damage Prevention Coordinator.  Within 1 year of the Effective Date, Defendants shall appoint one person to be their Damage Prevention Coordinator.

18.     Ground Monitoring. Within 1 year of the Effective Date of this Consent Decree, and once every Calendar Year thereafter, Defendants shall conduct ground monitoring of the Pipeline by walking or driving along the Pipeline. During this and any other dedicated ground monitoring performed, the monitors shall note in writing any observation of special threats to the Pipeline that were not previously discovered and noted. Such special threats may include, but are not limited to, Deep Tilling within 50 feet of the Pipeline, Excavation within 75 feet of the Pipeline, surface grading within 75 feet of the Pipeline, inadequate markers, and/or any exposed pipe. These threats shall be promptly reported to the Defendants' Damage Prevention Coordinator. The monitors shall also

immediately determine if any observed Deep Tilling or Excavation activities within 75 feet of the Pipeline were reported to the applicable state's One Call system, if required by the applicable state's One Call system. If the monitors determine that the observed Deep Tilling or Excavation was not reported to the state's One Call system as required by the state's One Call system, the monitor shall notify the appropriate MAPL, Enterprise, or contractor personnel who would normally have received a One Call notification, who shall treat the Deep Tilling or Excavation as if it had been the subject of a One Call notification.

19.     <u>Notification to Excavators and Land Developers</u>.  Within 1 year of the Effective Date of this Consent Decree, Defendants shall use reasonable efforts to identify all excavators and land developers who conduct operations within 20 miles of the Pipeline.  Within 1 year of the Effective Date of this Consent Decree, and once each Calendar Year thereafter, Defendants shall use reasonable efforts to notify such excavation contractors and land developers in writing of the Pipeline locations in their area and provide them with information about any applicable One Call system. Defendants shall maintain this list of excavators and land developers and use reasonable efforts to update it annually.

20.     Within 1 year of the Effective Date of this Consent Decree, Defendants shall  use a centralized computerized system to track the external force threats to the Pipeline. Any information concerning activities that pose threats to the Pipeline that Defendants acquire from their aerial patrols, ground monitoring, or other sources (including notice of Excavations where One Call was not notified) shall be reported to the Damage Prevention Coordinator, who shall ensure the entry of this information into the external force threat tracking system. The Damage Prevention Coordinator shall compile, review, analyze, and disseminate this information in an appropriate written or electronic format to appropriate personnel of Defendants, including the SCADA Controllers, on a quarterly basis.

21.    If any information gathered pursuant to this Consent Decree or by other means demonstrates that Excavation or Deep Tilling is regularly occurring at depths or in a manner that may cause damage to a buried pipeline, Defendants shall either reach agreement with the landowner to cease such activities, lower this segment of the Pipeline, or otherwise provide additional cover for the segment of Pipeline.

22.    <u>Funds for Mitigation of External Pipeline Threats</u>.  During the 4 year period after the Effective Date of this Consent Decree, Defendants shall spend at least $200,000 in total on the following activities to mitigate external threats to the Pipeline or the potential for a release to reach a navigable water, including: (1) relocating, providing additional cover, lowering or replacing Pipeline segments; and/or (2) the installation of new remote shutoff valves on Pipeline segments that would minimize release volumes; and/or (3) the installation of new physical barriers that protect the Pipeline, such as fences or pipeline protective covers such as concrete barriers; and/or (4) the installation of equipment, structures, or systems that will prevent discharges from reaching navigable water; and/or (5) any other acceptable mitigation efforts that have been pre-approved by EPA pursuant to Paragraph 23-25 below.  Items (1), (2), (3), and (4) of the preceding sentence shall not require EPA pre-approval.  Within the first three Annual Reports required by Paragraph 29 below, Defendants shall submit documentation of expenditures within the reporting period that are consistent with these stated purposes, for EPA approval pursuant to Paragraphs 23-25 below. EPA may disapprove any expenditure claimed by Defendants in satisfaction of this Paragraph on the sole ground it does not satisfy one of the categories described above, subject to Defendants' right to Dispute Resolution (Section X). Should EPA take this action and the Defendants not be successful in Dispute Resolution (Section X), this amount shall not be deducted from the total expenditures required by Defendants pursuant to this Paragraph, and the obligations for mitigation expenditures shall continue until EPA has approved $200,000 in expenditures. This Paragraph does not limit

Defendants' obligation, if any, to undertake any of the above measures to the extent required by applicable law.

## VI.  APPROVAL OF DELIVERABLES

23.  <u>Approval of Deliverables</u>.  After review of any plan, report, or other item that is required to be submitted pursuant to this Consent Decree, EPA shall in writing:  a) approve the submission; b) approve the submission upon specified conditions; c) approve part of the submission and disapprove the remainder; or d) disapprove the submission.

24.  If the submission is approved pursuant to Paragraph 23.a, Settling Defendants shall take all actions required by the plan, report, or other document, in accordance with the schedules and requirements of the plan, report, or other document, as approved. If the submission is conditionally approved or approved only in part, pursuant to Paragraph 23.b or .c, Settling Defendants shall, upon written direction from EPA, take all actions required by the approved plan, report, or other item that EPA determines are technically severable from any disapproved portions, subject to Settling Defendants' right to dispute only the specified conditions or the disapproved portions, under Section X of this Decree (Dispute Resolution).

25.  If the submission is disapproved in whole or in part pursuant to Paragraph 23.c or .d, Settling Defendants shall, within 45 Days or such other time as the Parties agree to in writing, correct all deficiencies and resubmit the plan, report, or other item, or disapproved portion thereof, for approval, in accordance with the preceding Paragraphs. If the resubmission is approved in whole or in part, Settling Defendants shall proceed in accordance with the preceding Paragraph.

26.  Any stipulated penalties applicable to the original submission, as provided in Section VIII of this Decree (Stipulated Penalties), shall accrue during the 45-Day period or other specified period, but shall not be payable unless the resubmission is untimely or is disapproved in whole or in part; provided that, if the original submission was so deficient as to constitute a material breach

of Settling Defendants' obligations under this Decree, the stipulated penalties applicable to the original submission shall be due and payable notwithstanding any subsequent resubmission.

27.      If a resubmitted plan, report, or other item, or portion thereof, is disapproved in whole or in part, EPA may again require Settling Defendants to correct any deficiencies, in accordance with the preceding Paragraphs, subject to Settling Defendants' right to invoke Dispute Resolution and the right of EPA to seek stipulated penalties as provided in the preceding Paragraphs.

28.      <u>Permits</u>.   Where any compliance obligation under this Section requires Settling Defendants to obtain a federal, state, or local permit or approval, Settling Defendants shall submit timely and complete applications and take all other actions that are legally required or reasonably necessary to obtain all such permits or approvals. Settling Defendants may obtain relief under the provisions of Section IX of this Consent Decree (Force Majeure) for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, if Settling Defendants have submitted timely and complete applications and have taken all other actions that are legally required or reasonably necessary to obtain all such permits or approvals.

## VII.  <u>REPORTING REQUIREMENTS</u>

29.      In addition to any submittals or record keeping required above, within 3 months following the first annual anniversary of the Effective Date, Defendants shall submit an Annual Report fully documenting the performance of Defendants of the tasks required by Section V above including any specific submissions required by those Paragraphs.  Thereafter, during the pendency of this Decree, by the annual anniversary of this date, Defendants shall submit an updated Annual Report documenting the performance of Defendants of the tasks required by Section V above.  These Annual Reports shall be submitted as specified in Section XIV (Notices).  Within the fourth and final Annual Report, Defendants shall provide an evaluation of the Defendants' experience in the

<u>United States v. Enterprise et al.</u> Consent Decree Page 12.

implementation of the injunctive relief requirements set forth in Section V.  This evaluation is to be provided subsequent to Defendants having fulfilled all of their obligations under this Consent Decree and shall include (1) a description of what elements of the required injunctive relief Defendants anticipate continuing after termination of this Consent Decree; and (2) what elements of the required injunctive relief Defendants anticipate continuing in a modified form.  In no event shall this evaluation be a basis, in any manner whatsoever, for stipulated penalties or any other violation under this Consent Decree.

30.     Each report submitted by Defendants under this Section shall be signed by a responsible corporate officer of the submitting party and include the following certification:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. I further certify, based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowingly and willfully submitting a materially false statement.

## VIII.  STIPULATED PENALTIES

31.     If Defendants fail to make the payments required under Section IV (Civil Penalty) when due, Defendants shall pay a stipulated penalty of ten thousand dollars ($10,000) to Plaintiff per day for each day that the payment is late.  Late payment of the civil penalty shall be made in accordance with payment instructions in Section IV above.  Stipulated penalties shall be paid in accordance with the instructions set forth in Paragraph 40 below.

32.      Defendants shall be liable for stipulated penalties in the amounts detailed below to the United States for all other violations of this Consent Decree, unless excused under Section IX (Force Majeure).   The following stipulated penalties shall accrue for each violation of this Consent

Decree as set forth in Paragraph 32 a-e below.  Where the stipulated penalty indicated below accrues "per violation per day," the penalty shall apply for each day that the violation continues.

      a.      Violations of the requirements set forth in Paragraphs 15-16 relating to release reporting: $5,000 per release not reported in compliance with Paragraphs 15 and 16.

      b.      Violations of the requirements set forth in Paragraphs 12 - 14 , 18, 19 and 21 regarding aerial patrols, contractors, reporting of excavators not following One Call, ground monitoring, notification to excavators, contractors and developers, and landowner agreements:  $500 per violation per day.

      c.      Violations of the requirements set forth in Paragraphs 17-18 regarding the Damage Prevention Coordinator and tracking of external threats:  $250 per violation per day.

      d.      Violations of the requirements set forth in Paragraph 22 regarding funds for mitigation of Pipeline threats: $1.50 for each dollar not spent on mitigation as required.

      e.      Violations of any other requirements not listed in paragraphs 32 a-d above: $150 per violation per day.

33.      Stipulated penalties under this Section shall begin to accrue on the day after performance is due, and shall continue to accrue until performance is satisfactorily completed or the violation otherwise cured.  Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.  Defendants shall pay any stipulated penalty within 30 Days of receiving a written demand.  The United States may, in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due under this Consent Decree.

34.      Stipulated penalties shall continue to accrue as provided in Paragraph 33, above, during any Dispute Resolution, with interest on accrued penalties payable and calculated at the rate

established by the Secretary of the Treasury, pursuant to 28 U.S.C. § 1961, but need not be paid until the following:

        a.    If the dispute is resolved by agreement, Defendants shall pay accrued stipulated penalties determined to be owing, together with interest, to Plaintiff within 30 Days of the effective date of that agreement unless that agreement limits or waives such penalties;

        b.    If the dispute is submitted to the Court and Plaintiff prevails in whole or in part, Defendants shall pay all accrued penalties determined by the Court to be owed, together with interest, within 60 Days of receiving the Court's decision or order, except as provided in Subparagraph c. below;

        c.    If any Party appeals the district court's decision, Defendants shall pay all accrued penalties determined to be owed, together with interest, within 15 Days of receiving the final appellate court decision.

    35.    Defendants shall, as directed by the United States in its demand, pay stipulated penalties owed to the United States by EFT or by certified or cashier's check in the amount due, payable to the U.S. Department of Justice, referencing the civil action number assigned to this case and DOJ Number 90-5-1-1-06074/4, and delivered to the office of the United States Attorney, District of Nebraska, to be deposited in the U.S. Treasury.  The payment documents shall specify that the payments are for stipulated penalties to be deposited into the United States Treasury pursuant to 31 U.S.C. § 3302.

    36.    Defendants shall not deduct stipulated penalties paid under this Section in calculating federal income tax.

37.     If Defendants fail to pay stipulated penalties according to the terms of this Consent Decree, Defendants shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment of stipulated penalties became due under Paragraph 34.

38.     Subject to the provisions of Section XII of this Consent Decree (Effect of Settlement/Reservation of Rights), the stipulated penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to Plaintiff for Defendants' violation of this Consent Decree or applicable law.

## IX.  FORCE MAJEURE

39.     "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Settling Defendants, of any entity controlled by Settling Defendants, or of Settling Defendants' contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Settling Defendants' best efforts to fulfill the obligation. The requirement that Settling Defendants exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any such event (a) as it is occurring and (b) after it has occurred to prevent or minimize any resulting delay to the greatest extent possible. "Force Majeure" does not include Settling Defendants' financial inability to perform any obligation under this Consent Decree.

40.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, Settling Defendants shall provide notice orally or by electronic or facsimile transmission to the United States and EPA within 72 hours, or as soon as possible thereafter, of when Settling Defendants first knew that the event might cause a delay. Within 7 Days thereafter, Settling Defendants shall provide in writing to EPA an explanation and description of the reasons for the delay; the anticipated duration of the delay; all

actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Settling Defendants' rationale for attributing such delay to a force majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of Settling Defendants, such event may cause or contribute to an endangerment to public health or welfare, or the environment. Settling Defendants shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure. Failure to comply with the above requirements shall preclude Settling Defendants from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Settling Defendants shall be deemed to know of any circumstance of which Settling Defendants, any entity controlled by Settling Defendants, or Settling Defendants' contractors knew or should have known.

41.    If EPA agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. EPA will notify Settling Defendants in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

42.    If EPA does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify Settling Defendants in writing of its decision.

43.    If Settling Defendants elect to invoke the dispute resolution procedures set forth in Section X (Dispute Resolution), it shall do so no later than 15 days after receipt of EPA's notice. In any such proceeding, Settling Defendants shall have the burden of demonstrating by a preponderance

of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Settling Defendants complied with the requirements of Paragraphs 39-40, above. If Settling Defendants carry this burden, the delay at issue shall be deemed not to be a violation by Settling Defendants of the affected obligation of this Consent Decree identified to EPA and the Court.

## X.  DISPUTE RESOLUTION

44.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. Settling Defendants' failure to seek resolution of a dispute under this Section shall preclude Settling Defendants from raising any such issue as a defense to an action by the United States to enforce any obligation of Settling Defendants arising under this Decree.

45.     Informal Dispute Resolution.  Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when Settling Defendants send the United States a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed 20 Days from the date the dispute arises, unless that period is modified by written agreement. If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within 20 Days after the conclusion of the informal negotiation period, Settling Defendants invoke formal dispute resolution procedures as set forth below.

46.     Formal Dispute Resolution.  Settling Defendants shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the

United States a written Statement of Position regarding the matter in dispute. The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Settling Defendants' position and any supporting documentation relied upon by Settling Defendants.

47.     The United States shall serve its Statement of Position within 45 Days of receipt of Settling Defendants' Statement of Position. The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States.  The United States' Statement of Position shall be binding on Settling Defendants, unless Settling Defendants file a motion for judicial review of the dispute in accordance with the following Paragraph.

48.     Settling Defendants may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XIV of this Consent Decree (Notices), a motion requesting judicial resolution of the dispute. The motion must be filed within 10 Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph. The motion shall contain a written statement of Settling Defendants' position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

49.     The United States shall respond to Settling Defendants' motion within the time period allowed by the Local Rules of this Court. Settling Defendants may file a reply memorandum, to the extent permitted by the Local Rules.

50.     <u>Standard of Review</u>

a.     <u>Disputes Concerning Matters Accorded Record Review</u>.  Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 48 pertaining to the

adequacy or appropriateness of plans, procedures to implement plans, schedules, or any other items requiring approval by EPA under this Consent Decree; the adequacy of the performance of work undertaken pursuant to this Consent Decree; and all other disputes that are accorded review on the administrative record under applicable principles of administrative law, Settling Defendants shall have the burden of demonstrating, based on the administrative record, that the position of the United States is arbitrary and capricious or otherwise not in accordance with law.

b.     <u>Other Disputes</u>.  Except as otherwise provided in this Consent Decree, in any other dispute brought under Paragraph 48, Settling Defendants shall bear the burden of demonstrating that their position complies with this Consent Decree and better further the objectives of the Consent Decree.

51.     The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Settling Defendants under this Consent Decree, unless and until final resolution of the dispute so provides. Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 34. If Settling Defendants do not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VIII (Stipulated Penalties).

## XI.  INFORMATION COLLECTION AND RETENTION

52.     The United States and its representatives, including attorneys, contractors, and consultants shall, upon presentation of credentials, have the right to:

a.     monitor the progress of activities required under this Consent Decree;

b.     verify any data or information submitted to the United States in accordance with the terms of this Consent Decree;

      c.     obtain samples and, upon request, splits of any samples taken by Settling Defendants or their representatives, contractors, or consultants;

      d.     obtain documentary evidence, including photographs and similar data; and

      e.     assess Settling Defendants' compliance with this Consent Decree.

53.     Upon request, Settling Defendants shall provide EPA or its authorized representatives splits of any samples taken by Settling Defendants. Upon request, EPA shall provide Settling Defendants splits of any samples taken by EPA.

54.     Settling Defendants shall retain, and shall instruct their contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in their or their contractors' or agents' possession or control, or that come into their or their contractors' or agents' possession or control, and that relate to Settling Defendants' performance of their obligations under this Consent Decree for a period of 3 years after the creation of such document, record, or other information. This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures. At any time during this information-retention period, upon request by the United States, Settling Defendants shall provide copies of any documents, records, or other information that Settling Defendants are required to maintain under this Paragraph, and Settling Defendants shall request their contractors and agents to provide copies of any documents Settling Defendants instructed their contractors or agents to maintain under this Paragraph.

55.     Settling Defendants may assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2 or is privileged. As to any information that Settling Defendants seek to protect as CBI, Settling Defendants shall follow the procedures set forth in 40 C.F.R. Part 2. Settling Defendants may assert

that certain documents, records, or other information are privileged under the attorney-client privilege or any other privilege recognized by federal law. If Settling Defendants assert such a privilege, they shall provide the following:  (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of each author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the subject of the document, record, or information; and (6) the privilege asserted by Settling Defendants. However, no documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

56.     This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal laws, regulations, or permits, nor does it limit or affect any duty or obligation of Settling Defendants to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XII.  EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

57.     This Consent Decree resolves the claims of the United States for civil penalties and injunctive relief under Sections 309 and 311(b) of the Clean Water Act, 33 U.S.C. §§ 1319 and 1321(b), arising from the discharges of oil that occurred on March 29, 2007, near Yutan, Nebraska, on  April 23, 2010, near Niles, Kansas, and on August 13, 2011, near Onawa, Iowa.

58.     The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree, except as expressly stated in Paragraph 57. This Consent Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the CWA or implementing regulations, or under other federal laws, regulations, or permit conditions, except as expressly specified in Paragraph 57. The United States further reserves all legal

and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, Settling Defendants, whether related to the violations addressed in this Consent Decree or otherwise.

59.     Settling Defendants hereby covenant not to sue and agree not to assert any claims related to the discharges alleged the Complaint, or response activities or natural resource damages in connection with those discharges, against the United States pursuant to the CWA, Oil Pollution Act of 1990 (OPA), 33 U.S.C. § 2701 *et seq*., or any other federal law, state law, or regulation including, but not limited to, any direct or indirect claim for reimbursement from the Oil Spill Liability Trust Fund, as defined in section 1001 of OPA, 33 U.S.C. § 2701(11), and any direct or indirect claim for reimbursement from the Hazardous Substance Superfund (established pursuant to the Internal Revenue Code, 26 U.S.C. §9507) through CERCLA sections 106(b)(2), 107, 111, 112, 113, or any other provision of law.

60.     In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, civil penalties, or other appropriate relief relating to Settling Defendants' violations, Settling Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 57 of this Section.

61.     This Consent Decree is not a permit, or a modification of any permit, under any federal, state, or local laws or regulations. Settling Defendants are responsible for achieving and maintaining complete compliance with all applicable federal, state, and local laws, regulations, and permits; and Settling Defendants' compliance with this Consent Decree shall be no defense to any

action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Settling Defendants' compliance with any aspect of this Consent Decree will result in compliance with provisions of the CWA, or with any other provisions of federal, state, or local laws, regulations, or permits.

62.     This Consent Decree does not limit or affect the rights of Settling Defendants or of the United States against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Settling Defendants, except as otherwise provided by law.

63.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XIII.  COSTS

64.     The Parties shall bear their own costs of this action, including attorney fees, except that the United States shall be entitled to collect the costs (including attorney fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Settling Defendants.

## XIV.  NOTICES

65.     Unless otherwise specified herein, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and addressed as follows:

Notices and Submissions to the United States:  Where this Consent Decree requires that notices and submissions are to be made to the United States they shall be made to the United States Department

of Justice and EPA. Where the Consent Decree Requires that Notices and Submissions shall be made

to EPA, they need only be sent to EPA.

<u>To the United States</u>:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Box 7611 Ben Franklin Station
Washington, D.C.  20044-7611
Re: DOJ No. 90-5-1-1-06074/4

<u>To EPA</u>:

Paula Higbee, Compliance Officer
Storage Tank & Oil Pollution Branch
EPA Region 7
901 N. 5th Street
Kansas City, Kansas 66101

<u>To Settling Defendants(s)</u>:

Matt Mara
Senior Director
Enterprise Products
1100 Louisana
Houston, TX 77002

and


Edward Lewis
Fulbright & Jaworski L.L.P.
1201 McKinney, Suite 5100
Houston, TX 77010

      66.    Any Party may, by written notice to the other Parties, change its designated notice

recipient or notice address provided above.

67.     Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XV.  EFFECTIVE DATE

68.     The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

## XVI.  RETENTION OF JURISDICTION

69.     The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections X (Dispute Resolution) or XVII (Modification), or effectuating or enforcing compliance with the terms of this Decree.

## XVII.  MODIFICATION

70.     The terms of this Consent Decree, including any attached appendices, may be modified only by a subsequent written agreement signed by all the Parties. Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

71.     Any disputes concerning modification of this Decree shall be resolved pursuant to Section X of this Decree (Dispute Resolution), provided, however, that, instead of the standard of review provided by Paragraph 50, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XVIII.  TERMINATION

72.     After Settling Defendants have satisfactorily complied with the requirements of this Decree for a period of 4 years, and have paid the civil penalty and any accrued stipulated penalties

as required by this Consent Decree, Settling Defendants may serve upon the United States a Request for Termination, stating that Settling Defendants have satisfied those requirements, together with all necessary supporting documentation.

73.     Following receipt by the United States of Settling Defendants' Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Settling Defendants have satisfactorily complied with the requirements for termination of this Consent Decree. If the United States agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

74.     If the United States does not agree that the Decree may be terminated, Settling Defendants may invoke Dispute Resolution under Section X of this Decree (Dispute Resolution). However, Settling Defendants shall not seek Dispute Resolution under Section X of any dispute regarding termination until 60 days after service of their Request for Termination.

## XIX.  PUBLIC PARTICIPATION

75.     This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate. Settling Defendants consent to entry of this Consent Decree without further notice and agree not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Settling Defendants in writing that it no longer supports entry of the Decree.

## XX.  SIGNATORIES/SERVICE

United States v. Enterprise et al. Consent Decree Page 27.

76.     Each undersigned representative of Settling Defendants and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

77.     This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis. Settling Defendants agree to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons. Copies shall be provided in accordance with the notice provisions of Paragraph 65. Settling Defendants need not file an Answer to the Complaint in this action unless and until the United States withdraws its consent to this Consent Decree and/or the Court declines to enter this Consent Decree.

## XXI.  INTEGRATION

78.     This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supercedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein. No other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents, nor shall such be used in construing the terms of this Decree.

## XXII.  FINAL JUDGMENT

79.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States and Settling Defendants. The

Court finds that there is no just reason for delay and therefore enters this judgment as a final

judgment under Fed. R. Civ. P. 54 and 58.

DATED this 15th day of August, 2012

BY THE COURT:

John M. Gerrard
United States District Judge

[This page intentionally left blank]

FOR THE UNITED STATES OF AMERICA

Date: 5/10/12

IGNACIA S. MORENO
Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division

Date: 5/17/12

ELIZABETH L. LOEB
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, D.C. 20044

DEBORAH R. GILG
United States Attorney
District of Nebraska

/s/ LAURIE A. KELLY
LAURIE A. KELLY,  Bar  # 557575
Assistant United States Attorney
District of Nebraska
1620 Dodge Street, Suite 1400
Omaha, Nebraska 68102-1506
Telephone 402-661-3700
Fax 402-661-3081
laurie.kelly@usdoj.gov

United States v. Enterprise et al. Consent Decree Page 31.

FOR PLAINTIFF THE UNITED STATES OF AMERICA (continued):

Date: 4/2/12

KARL BROOKS
Regional Administrator
U.S. Environmental Protection Agency, Region 7

Date: 4/2/12

DAVID COZAD
Regional Counsel
U.S. Environmental Protection Agency, Region 7

Date: 3-12-12

HOWARD BUNCH
Counsel
U.S. Environmental Protection Agency, Region 7
901 N. 5th Street
Kansas City, Kansas 66101

United States v. Enterprise et al. Consent Decree Page 32.

FOR THE PLAINTIFF UNITED STATES OF AMERICA (continued):

Date: _4/12/12_

CYNTHIA GILES
Assistant Administrator
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460

Date: _4/9/12_

PAMELA J. MAZAKAS
Acting Director
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460

Date: _3/21/12_

MARK POLLINS
Director
Water Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460

Date: _3/29/12_

KELLY BRANTNER
Water Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460

United States v. Enterprise et al. Consent Decree Page 33.

FOR DEFENDANT MID-AMERICA PIPELINE COMPANY, LLC

Date: _Mar. 22, 2012_          *Raymond P Albrecht*

Name: Raymond P. Albrecht
Title: General Counsel & Secretary
Address: 1100 Louisiana, Ste 2200
Houston, Texas 77002

Telephone: 713-381-8380
Fax        713-381-6950

FOR DEFENDANT ENTERPRISE PRODUCTS OPERATING, L.L.C.

Date: 4-25-12

Name: KEVIN BODENHAMER

Title: SR VP EHS&T

Address: 1100 LOUISIANA

HOUSTON, TX 77002

Telephone: 713-381-8261

Fax 281-887-7357

-98°0'0"
-96°0'0"
-94°0'0"
-92°0'0"
44°0'0"
42°0'0"
40°0'0"
38°0'0"
Pine Bend Term.
Gas Supply - Rosemont
Wisconsin
Minnesota
South Dakota
Jackson
Sanborn
Marcus
Moville
Whiting
Iowa
Herman
Nebraska
Valley
Greenwood
N
W
E
S
20 0 20 40 60
Miles
Beatrice
Linn
Abilene
Kansas
Conway
Enterprise Products
www.epplp.com
West Red Pipeline
Delivery/Reciept
Pump Station
Terminal
Underground Storage
West Red Pipeline
This map has been carefully compiled from the best sources available at the time of preparation. Enterprise Products Company does not guarantee the accuracy of the map or assume any responsibility of liability for any reliance thereon.
Date: 12/15/2011
V:\GISProjects\Sysmap\MAPL\Graphics\MApWestlegsystem.mxd

